# Federal Defenders
## OF NEW YORK, INC.

Eastern District
One Pierrepont Plaza-16th Floor, Brooklyn, NY 11201
Tel: (718) 330-1200 Fax: (718) 855-0760

David E. Patton
*Executive Director and
Attorney-in-Chief*

March 27, 2017

*Eastern District*
Peter Kirchheimer
*Attorney-in-Charge*

The Honorable Dora Irizarry
United States District Judge
United States District Court
Eastern District of New York
225 Cadman Plaza
Brooklyn, New York 11201

**RE:   United States v. Qumille Love, 15 CR 284 DLI**

Dear Chief Judge Irizarry:

I write to try to specify the impact of Beckles v. U.S. 580 U.S.___, 2017 WL 855781 (3/6/17) on Love's argument that he is not a career offender because his bank robbery and two attempted bank robbery offenses of conviction were not crimes of violence and also that his predicate N.Y. state robberies were not crimes of violence. I have argued that the force clause of the violent crime career offender definition did not apply because his non violent "note" robberies (this is a bank robber. Give me the money) were not categorical robberies. They were not violent crimes under the residual clause of the definition because that was unconstitutionally vague under Johnson v. U.S., 135 Sup.Ct. 2551 (2015). After Beckles the residual clause is not unconstitutional because the advisory guidelines merely guide the court's discretion. However, as a statutory matter, the residual clause is still unintelligible. It would be procedural sentence error to try to apply the unintelligibly vague residual clause to find a guideline. Thus Love is not a career offender because his offenses of conviction "note" robberies and his predicate N.Y. state robberies are not violent crimes as a statutory rather than constitutional matter.

On March 15, I filed a brief summary of the argument why the court can not use the unintelligible residual clause to find Love a career offender in order to notice the argument before the 3/19 sentence (3/15/17 defendant's letter attached as exhibit A). Since this Court has adjourned the sentence for briefing, I am submitting a fuller version of last week's summary statutory argument.

I.  **The "hopelessly indeterminate" career offender residual clause definition of violent crime can not be used to find Love a career offender.**

The residual clauses of ACCA and the Guideline contemplate increased punishment for a defendant previously convicted of a crime that "involves conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. § 924 (c)(2)(B)(ii); U.S.S.G. § 4B1.2(a)(2). In its 2015 *Johnson* decision, the Supreme Court explained why this language "proved 'nearly impossible to apply consistently.'" 135 S. Ct. at 2560 (citation omitted). In addition to "division about whether the residual clause covers this or that crime," there was "pervasive disagreement about the nature of the inquiry one is supposed to conduct and the kinds of factors one is supposed to consider." *Id.* First, "the residual clause leaves grave uncertainty about how to estimate the risk posed by a crime. It ties the judicial assessment of risk to a judicially imagined 'ordinary case' of a crime, not to real-world facts or statutory elements. How does one go about deciding what kind of conduct the 'ordinary case' of a crime involves? 'A statistical analysis of the state reporter? A survey? Expert evidence? Google? Gut instinct?' . . . The residual clause offers no reliable way to choose between these competing accounts of what [an] 'ordinary' [crime] involves." *Id.* at 2557-58 (citation omitted). Second, "the residual clause leaves uncertainty about how much risk it takes for a crime to qualify . . . . It is one thing to apply an imprecise 'serious potential risk' standard to real-world facts; it is quite another to apply it to a judge-imagined abstraction." *Id.* at 2558. "By combining indeterminacy about how to measure the risk posed by a crime with indeterminacy about how much risk it takes for the crime to qualify," the Court concluded, "the residual clause produces more unpredictability and arbitrariness than the Due Process Clause tolerates." *Id.*

*Beckles* disputes none of this. Far from holding the clause's "hopeless indeterminacy," *Johnson*, 135 S. Ct. at 2558, vanishes in the Guideline context, the *Beckles* Court all but said outright that trying to apply the clause in Guideline cases is, just as it is in ACCA cases, an exercise in "guesswork and intuition." *Id.* at 2559. Adhering to *Johnson*'s holding that ACCA's clause is invalid under the void-for-vagueness doctrine, the *Beckles* Court held "only" that the Guideline is "not subject to a challenge under the void-for-vagueness doctrine," 2017 WL 855781 at *9, because

2

it does not "fix the permissible range of sentences." *Id.* at *6.

This does not disturb the Court's prior holding that the residual clause is unclear. The *Johnson* Court found the clause "a 'judicial morass that defies systemic solution,' 'a black hole of confusion and uncertainty' that frustrates any effort to impart 'some sense of order and direction,'" 135 S. Ct. at 2562 (citations omitted), and a provision whose application is "anything but evenhanded, predictable, or consistent." *Id.* at 2563. The *Beckles* Court did not back away from any of this; it merely said such uncertainty doesn't state a void-for-vagueness claim given that the Guideline doesn't technically "fix" punishment.

"That something is vague as a general matter," Justice Kennedy explained, "does not necessarily mean that it is vague within the well-established legal meaning of that term." *Beckles*, 2017 WL 855781 at *11 (Kennedy, J., concurring). In other words: yes, the Guideline's residual clause is vague– it's just not "void for vagueness" under the Due Process Clause given the particulars of that doctrine. But "our holding today," the Court said, "does not render 'sentencing procedure[s]' entirely 'immune from scrutiny under the due process clause.'" *Id.* at *9 (citations omitted).

Whether as a matter of constitutional due process or simple procedural regularity, the Court requires judges to "begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *Gall*, 552 U.S. at 49. And that cannot be done by using a clause that yields "anything but evenhanded, predictable, or consistent" results. *Johnson*, 135 S. Ct. at 2563.
It introduces an unacceptable degree of arbitrariness into sentencing proceedings to begin by applying a rule that is so vague that efforts to interpret it boil down to "guesswork and intuition." One judge may conduct a statistical analysis to decide that a defendant's crime of conviction is not a crime of violence. Another may rely on gut instinct to conclude that it is. Still a third may "throw [our] opinions into the air in frustration, and give free rein to [her] own feelings" in making the decision. Importantly, that decision is the end of the ballgame for a criminal defendant. Although he may ask the judge to vary downward from the Guidelines range, he must take the range as the starting point for his request. He may ask for a month here or a month there, but he is negotiating

3

from a baseline he cannot control or predict. The result is a sentencing proceeding hopelessly skewed from the outset by "unpredictability and arbitrariness."

*Beckles*, 2017 WL 855781 at *16 (Sotomayor, J., concurring) (citations omitted).

Circuit judges recognized the unworkability of the residual clause -- as a problem entirely distinct from the void-for-vagueness doctrine -- even before *Beckles* was decided.

As Judge Ikuta of the Ninth Circuit observed, for example, "given the residual clause's inscrutability in the ACCA context, application of the residual clause would violate the Supreme Court's instruction that the district court 'begin all sentencing proceedings by correctly calculating the applicable Guidelines range.'" *Lee*, 821 F.3d at 1136 (Ikuta, C.J., dissenting) (quoting *Gall*, 552 U.S. at 49). Thus, because the clause "cannot be accurately interpreted" in either an ACCA or Guideline case, "a district court would commit a procedural error and abuse its discretion if it used the Guideline's residual clause to calculate the Guidelines range."[1] *Id.*

The Eleventh Circuit agreed:

How can a sentencing court correctly calculate the Guidelines range when it is forced to apply the "hopeless[ly] indetermina[te]" language of the career-offender guideline? *Johnson*, 135 S.Ct. at 2448. Courts had "trouble making sense" of the very same words when they tried to apply them under the ACCA's residual clause. *Id.* at 2559-60. The Supreme Court observed that "[n]ine years' experience trying to derive meaning from the residual clause convince[d it] that [it] ha[d] embarked upon a failed enterprise." *Id.* at 2560. This "'black hole of confusion and uncertainty' that frustrates any effort to impart 'some sense of order and direction,'" *id.* at 2562 (quoting *United States v. Vann*, 660 F.3d 771, 787 (4th Cir. 2011) (Agee, J., concurring)), does not somehow magically

---

[1] Though styled a dissent, Judge Ikuta's opinion is better termed a concurrence: as the majority noted, she "also concluded that the appropriate disposition is to remand for resentencing." *Lee*, 821 F.3d at 1130 n.5.

4

become clearer or more meaningful because the words appear in the guideline, rather than in the ACCA.

Because of this muddle, a sentencing court cannot ascertain whether the challenged part of the career-offender guideline even applies when the guideline is raised, so the court necessarily cannot correctly calculate the Sentencing Guidelines range. As a result, the sentencing court cannot comply with the sentencing process's virtual statutory requirement that the sentencing court first correctly calculate the applicable Guidelines range.

And, as Judge Wilson notes, the confusion only grows on appeal. Determining whether a sentence imposed by a district court was procedurally reasonable requires appellate courts to first ascertain whether the district court correctly calculated the applicable Guideline range. But we are no more skilled in applying "hopeless[ly] indetermina[te]" language than district courts.

*Hunt*, 835 F.3d at 1283 (Rosenbaum, C.J., concurring, joined by Wilson and J. Pryor, C.JJ.) (This three-judge opinion was a concurrence because the relief requested – leave to file a second petition under 28 U.S.C. § 2255 on the ground that the Guideline's residual clause was "void for vagueness" – was foreclosed by circuit precedent).

The Sentencing Commission, conceding that "the definition of 'crime of violence' is complex and unclear," has itself "determined that the residual clause at § 4B1.2 implicates many of the same concerns cited by the Supreme Court in *Johnson*," and thus has "amend[ed] § 4B1.2(a)(2) to strike the clause. Removing the residual clause has the advantage of alleviating the considerable application difficulties associated with that clause, as expressed by judges, probation officers, and litigants." U.S. Sent'g Comm'n, *Amendment to the Sentencing Guidelines*, Jan. 21, 2016, at 1, 2 (available at https://tinyurl.com/ks9o9mv).

A "district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range. As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." *Gall*, 552 U.S. at 49 (citation omitted). As explained by the jurists above and confirmed by the Commission's amendment, this cannot be accomplished by relying on the "black hole of confusion" that is the residual clause. *Johnson*, 135 S. Ct. at 2562. Doing so would violate the requirement of calculating the correct range. In addition, relying on a clause that yields "anything but evenhanded, predictable, or consistent" results, *id.* at 2563, would run counter to the Guidelines' chief goal of remedying "the great variation among sentences imposed by different judges upon similarly situated offenders," which is a "serious impediment to an evenhanded and effective operation of the criminal justice system." *Mistretta v. United States*, 488 U.S. 361, 366 (1989). *See also* U.S.S.G. § 1A1.3 ("Congress sought reasonable uniformity in sentencing by narrowing the wide disparity in sentences."); *id.* (noting "the wide disparity that Congress established the Commission to reduce").

In sum, and void-for-vagueness doctrine aside, attempting to harness the "hopeless indeterminacy" of the residual clause remains an exercise in "guesswork and intuition." *Johnson*, 135 S. Ct. at 2558, 2559. As there is "no doubt about the unavoidable uncertainty and arbitrariness of adjudication under the residual clause," *id.* at 2562, it cannot be used given the requirement of "correctly calculating the applicable Guidelines range." *Gall*, 552 U.S. at 49.

II. **Love's "note" bank robbery and attempted robberies and his predicate N.Y. State robberies are not violent crimes under the force clause of the career offender definition because they do not categorically involve violent force.**

Defendant has argued at great length in his 10/6/16 initial sentence memo that his offenses of conviction of conviction and N.Y priors do not satisfy the force clause of the career offender definition. That argument is unchanged by Beckles. Because Federal bank robbery and attempted robbery and N.Y. second and third degree robbery can be committed without the requisite "*violent force*", Johnson v. U.S., 559 U.S. 133, 140 (2010) (emphasis in original) it is possible to commit federal bank robbery and N.Y. second and third degree robbery in a way that does not fall within the

6

career offender guidelines definition of crime of violence.

The fact that New York robbery does not require "*violent* force" has been confirmed by numerous courts considering the same or materially identical question-both before and after the Court of Appeals ruling in U.S. v. Corey Jones, 830 F3d 142, vacated pending Beckles (10/3/2016). Most importantly, the Jones force clause analysis of the applicability of New York robbery force to the Johnson I requisite violent force still applies. The Beckles analysis of the applicability of the Due Process clause to permissive guidelines is irrelevant to Jones the force clause analysis. See also *United States v. Johnson*, ___ F.Supp. 3d ___, 2016 WL 6684211, at *7 (E.D.D.Y Nov. 12, 2016) ("New York robbery is not a crime of violence under the force clause.") (Cogan, J.); *United States v. Avitto*, E.D.N.Y. No. 15-cr-265, Transcript of Sentencing on Mar. 14, 2016 (Although force is an element of [New York robbery], the violent force required after *Johnson* is not.... New York courts have found conduct such as bumping a victim and taking his money, shoving a victim aside to prevent pursuit of a co-defendant, and engaging in a tug-of-war with a victim over the property being stolen is sufficient to satisfy the "force" element of the robbery in the third degree. None of these minimal exertions of force rise tothe level of "violent force.") (Ross, J.) *United States v. Moncrieffe*, 167 F.Supp. 3d 383, 404-05 (E.D.N.Y. 2016) ("The minimum conduct under any grade or subsection of the New York robbery statute does not require violent physical force.") (Weinstein, J.); *United States v. Winston*, ___ F.3d ___, 2017 WL 977031, at *6 (4th Cir. Mar. 13, 2017) (Virginia robbery - which is committed where "the defendant approached the victim from behind, 'tapped her on the shoulder, and "jerked" her around by pulling her shoulder,' took her purse, and ran" -does not necessarily include the use, attempted use, or threatened use of 'violent force.'"); *United States v. Bell*, 840 F.3d 963, 966-67 (8th Cir. Oct. 28, 2016) (Missouri robbery - which is committed where "the defendant 'bumped'[victim's] shoulder and 'yanked' her purse away from her,'" and "'nudged' [the victim]," engaging in a "'slight struggle' over the purse" - is an offense that "does not necessarily require use of the type of violent force described by the Supreme Court in *Johnson*."); *United States v. Eason*, 829 F. 3d 633, 641 (8th Cir. 2016) (same as to Arkansas robbery, which can be committed by "jerking the door from [a victim], cornering [her] in the back hallway and grabbing her dress"); *United States v. Gardner*, 823 F. 3d 793, 803 (4th Cir. 2016) (same as to North Carolina robbery, which can be committed by "pushing the victim's hand off of a carton of cigarettes" or

7

"push[ing] the shoulder of an electronics store clerk, causing her to fall onto shelves while the defendant t[akes] possession of a television"); *United States v. Parnell*, 818 F.3d 974, 979 (9th Cir. 2016) ( same as to Massachusetts robbery, which can be committed by "any force, however slight"); *United States v. Castro-Vazquez*, 802 F.3d 28, 37 (1st Cir. 2015) (same as to Puerto Rico robbery, which requires only th "slightest use of force").

Because New York robbery does not fit the Guideline's force clause, and because the residual clause is a "'black hole of confusion and uncertainty' that frustrates any effort to impart 'some sense of order and direction,'" *Johnson,* S. Ct. at 2562 (citations omitted), there is no comprehensible textual basis in the Guideline to deem Love's priors a "crime of violence, nor the bank robbery offenses of conviction.

Thus,"there is nothing within § 4B1.2 (a)'s text to serve as an anchor for Application Note 1's inclusion of [robbery] within the definition of crime of violence." *Soto-Rivera*, 811 F.3d at 60. Commentary "has no legal force standing alone." *Rollins,* 836 F.3d at 742. It is authoritative only insofar as it "interprets or explains a guideline," *Stinson v. United States*, 508 U.S. 36, 38 (1993), which as this Court has noted, presumes the existence of text actually amenable to interpretation. See *Guerra v. Shanahan*, 831 F.3d 59, 64 (2d Cir. 2016) ("'Since the regulation gives no indication how to decide this issue, the Attorney General's effort to decide it now cannot be considered an interpretation of the regulation.'") (quoting *Gonzales v. Oregon*, 546 U.S. 243, 257 (2006)). *See also Allis-Chalmers Corp. V. Lueck*, 471 U.S. 202 211 (1985) ("The interests in interpretive uniformity and predictability...require that the meaning given a contract phrase or term be subject to uniform federal interpretation.").

The residual clause is not "void for vagueness," but suffering from "hopeless indeterminacy," *Johnson*, 135 S. Ct. At 2558, is functionally the same thing: there is "no doubt about the unavoidable uncertainty and arbitrariness of adjudication under the residual clause." *Id.* At 2562. A "morass that defies systemic solution."*id.*, cannot be interpreted sensibly or consistently by anyone, be it the courts or the Commission. Accordingly, the commentary's simple pronouncement that "the residual clause covers this or that crime." *id.* At 2560-including offenses as dissimilar as robbery, extortionate extension of credit, and possession of a silencer - is not an interpretation at all.

The Commission may make a "crime of violence" of whatever it wants, but it must do so in

8

the text or in commentary that actually interprets an interpretable textual clause. Otherwise, and if the mere listing of an offense in the commentary is enough despite of residual clause being incomprehensible, then there is no difference between text and commentary: each has equal force. But that is not the law. Commentary "has no independent force,: *Rollins*, 836 F.3d at 742 (emphasis omitted), and if "commentary and the guideline it interprets are inconsistent in the following one will result in violating... the other, the Sentencing Reform Act itself commands compliance with the guideline." *Stinson*, 508 U.S. at 43. This rule not only subordinates the commentary to the text, it requires the text to be decipherable enough to tell if following the commentary would violate it.

Here, however, the residual clause is a "morass that defies systemic solution" and a "'black hole of confusion and uncertainty' that frustrates any effort to impact 'same sense of order and direction.'" *Johnson*, 135 S. Ct. At 2562 (citations omitted). And just as the four offenses enumerated in the text immediately before the clause don't save it from "hopeless indeterminacy," *id.* at 2558 - "[c]ommon sense has not even produced a consistent conception of the degree of risk posed by each of the four enumerated crimes," *id.* at 2559 - the dissimilar crimes listed in the commentary also don't make the residual clause comprehensible. See also id. at 2561 ("'The phrase "shades of red," standing alone, does not generate confusion or unpredictability; but the phrase, "fire-engined red, light pink, maroon, navy blue, or colors that otherwise involve shades of red" assuredly does so.'") (emphasis in original; citation omitted).[2]

Conceding that "the definition of 'crime of violence' is complex and unclear." and recognizing "the considerable application difficulties associated with [the residual] clause,"

---

[2]Even if the residual clause were subject to clear and uniform interpretation, the commentary's inclusion of robbery would be "inconsistent with, or a plainly erroneous reading of, th[e] guideline." Stinson, 508 U.S. at 38. The Commission has no data on state robberies, and its data on federal robberies shows only 8.9% of them result in any level of physical injury, See U.S. Sent'g Comm'n, *Use of Guidelines and Specific Offense Characteristics* at 18-19 (2015) (available at https://tinyurl.com/mfy2psz). "'[S]erious' should be taken seriously." *United States v. Stevens*, 559 U.S. 460, 478 (2010), and on offense that results in injury less than one time out of 10 does not pose a "serious" risk of injury. U.S.S.G. § 4B1.2(a)(2). *See also Kimbrough v. United States*, 552, U.S. 85, 109 (2007) (A Guideline may be rejected where it does "not exemplify the Commission's exercise of its characteristic institutional role," such as where the Guidelines is not based on "'empirical data and national experience'") (citation omitted).

9

*Amendment to the Sentencing Guidelines, supra*, the Commission has deleted the clause and, among other changes, has added "robbery" to the text of the Guideline going forward. But under the text applicable here, there is only the force cause, which Love's priors do not fit, and a "black hole of confusion and uncertainty."[3] *Johnson*, 135 S.Ct. At 2562

Justices Ginsberg and Sotomayor, who concurred in *Beckles* on the narrow ground that the commentary precluded a constitutional vagueness challenge, *see Beckles*, 2017 WL 855781 at *12-*13, did not address (or reject) Love's argument: constitutional vagueness doctrine aside, commentary that does not actually interpret a textual provision - and instead simply adds to it despite there being no intelligible textual hook - is not controlling.

It is text that matters, and a "black hole of confusion and uncertainty " is no "anchor" by which to "import offenses not specifically listed "in the text. *Soto-Rivera*, 811 F.3d at 60. See *also Rollins*, 836 F.3d at 742 ("*adding* to the definition" of "crime of violence" is "necessarily inconsistent with the text of the guideline itself"); *Bell*, 840 F.3d at 967 ("The issue, then, is whether the government can rely solely upon the commentary when it expands upon the four offenses specifically enumerated in the Guideline itself. The answer is no."); *United States v. Potes-Castillo*, 638 F.3d 106, 111 (2d Cir. 201) ("[W]e reject the government's reading [of the commentary] because it is inconsistent with the text of the Guideline."); *United States v. Shell*, 789 F.3d 335, 340 (4th Cir. 2015) ("[T] the government skips past the text of §4B1.2 to focus on its commentary.... But it is the text, of course, that takes precedence.").

The crux of Love's argument has always been that his federal note robberies and his N.Y. state predicates are not categorical crimes of violence and thus do not satisfy the force clause of the career offender definition. Also of course, categorical classification aside, they do not in fact involve violence against the person. The only way they could be construed as violent crimes is by application of the residual clause. Since it is unintelligible, it cannot make Love a career offender

---

[3] And "robbery" is not an interpretation of the force clause: whether a crime "has as an element" the use, attempted use of threat of violence, U.S.S.G. § 4B1.2(a)(1), is a yes-or-no question, not one of interpretation. *See also Dietrick v. United States* , 2016 WL 4399589, at *4 (W.D. Wash. Aug. 18, 2016) ("Because robbery in Washington requires no more than *de minimis* force and does not require the use of threatened use of violent physical force, the 'robbery' reference in the commentary cannot be seen as interpreting or explaining the 'force' clause.").

10

as a statutory matter.

Defendant's arguments that Love's robberies do not satisfy the force element of the career offender definition are unchanged by Beckles. As a matter of statutory interpretation neither Federal bank robbery, nor N.Y. state robbey two and three are categorical robberies. The interpretation of the New York State law as to State robbery and Second Circuit rulings as to Federal bank robbery do not rely on Johnson. All that is changed after Beckles in that the residual clause is invalid, not because it is unconstitutional but because it is unintelligible.

Because Love's bank robberies are particularly non-violent, he is not a career offender. The non-career offender guideline from paragraphs 33, 35, and 36 of PSR would be adjusted offense level 22, C.H. category VI for an 84-105 months range. The adjusted offense level is unduly high because Love pled to all three counts of the indictment in order to preserve his right to appeal any putative career offender finding. The three count grouping yields three extra points. Were the court to disregard the three point right to appeal penalty, Love's adjusted offense level would be 19, C.H. category VI and a 63 and 78 months range. A sentence at the bottom of that range is appropriate for a bank robber who presents a note saying " this is a bank robber" and then walks away empty handed when two out of three tellers ignore him.

Respectfully,

PETER KIRCHHEIMER, ESQ.
Deputy Attorney-in-Charge
(718) 330-1206

cc: AUSA Gilman
P.O. Maneggio
Qumille Love

11